# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | : | |
| **OPPORTUNITY COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **C.A. No.04-1304-KAJ** |
| **P.T. MORGAN PAPER COMPANY, an** | : | |
| **affiliate of P.T. MORGAN PACKAGING** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**THE NEUBERGER FIRM, P.A.**

**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Attorneys for Defendant

Dated: December 14, 2005

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS..........................................................1

SUMMARY OF THE ARGUMENT...............................................................................2

STATEMENT OF FACTS...............................................................................................3

     A.    The Defendant Paper Company.....................................................................3

     B.    The Defendant Does Not Employ Fifteen Employees................................4

     C.    Plaintiff's Attempt to Aggregate Two Separate Companies......................5

     D.    The Other Separate and Legally Distinct Company....................................5

          1.    The Packaging Company..................................................................5

          2.    The Two Companies Operate Separately........................................6

               (a)    No Parent-Subsidiary Relationship......................................6

               (b)    Separate Handling of Personnel Matters.............................6

               (c)    Treated as Separate by Third Parties...................................7

               (d)    Separate Health Plans with Different Providers.................7

               (e)    Separate Insurance and Filings for Worker's Compensation.........................................................................7

               (f)    Separate Retirement Plans...................................................8

                (g)    Different Lines of Production and Customers....................8

     E.    The EEOC Investigator's Conversation with Ms. Robbi Smith.................9

ARGUMENT...................................................................................................................10

     I.    STANDARD OF REVIEW......................................................................10

     II.    AS A MATTER OF LAW, THE PROPER STANDARD FOR DISMISSAL IS SUMMARY JUDGMENT..............................................11

*i*

III.    P.T. MORGAN PAPER COMPANY DOES NOT HAVE FIFTEEN
        EMPLOYEES AND IS NOT A COVERED EMPLOYER UNDER
        TITLE VII..............................................................................................11

IV.     AS A MATTER OF LAW, THE PAPER COMPANY AND THE
        PACKAGING COMPANY ARE SEPARATE AND DISTINCT LEGAL
        ENTITIES AND CANNOT BE AGGREGATED TO MEET THE
        FIFTEEN EMPLOYEE THRESHOLD FOR TITLE VII UNDER THE
        NESBIT FRAMEWORK........................................................................12

        1.    Splitting a Company into Two or More to Evade Title VII...........12

        2.    Parent Directing Subsidiary's Act.................................................14

        3.    Substantive Consolidation..............................................................14

              (a)    The Degree of Unity Between the Two Entities................15

              (b)    Whether Two Companies are Treated as a Single
                     Company by Third Parties.................................................16

              (c)    Whether a Parent Company Covers Salaries,
                     Expenses, or Losses of its Subsidiary Company...............17

              (d)    Whether the Two Companies do Business Exclusively
                     with the Other..................................................................17

        4.    The Two Companies Cannot be Aggregated...................................18

CONCLUSION..............................................................................................19

*ii*

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

Boyle v. County of Allegheny, Pa., 139 F.3d 386 (3d Cir. 1998)......................................10

Carr v. Borough of Elizabeth, 121 Fed.Appx. 459 (3d Cir. Feb. 2, 2005).......................11

Goodman v. Meade Johnson & Company, 534 F.2d 566 (3d Cir. 1976).........................10

Montrose Medical Group Participating Savings Plan v. Bulger,
    243 F.3d 773 (3d Cir. 2001)...................................................................................10

Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003)...................................passim

Schoonejongen v. Curtiss-Wright Corporation, 143 F.3d 120 (3d Cir. 1998).................10

U.S. v. Best Foods, 524 U.S. 51 (1998).......................................................................6, 14

Watson v. Eastman Kodak Company, 235 F.3d 851 (3d Cir. 2000)................................10

**Statutes and Rules**

Title VII of the Civil Rights Act of 1964..................................................................passim

42 U.S.C. § 2000e(b)..................................................................................................1, 11

42 U.S.C. § 2000e-2(a)(1)...............................................................................................11

Fed.R.Civ.P. 56...............................................................................................................10

Fed.R.Civ.P. 56(c)...........................................................................................................10

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action by the EEOC against a small company in Smyrna, P.T. Morgan Paper Company ("the Paper Company").  The government claims the defendant is liable for co-worker or team leader use of racial slurs, which created a racially hostile work environment and led to the constructive discharge of just one person, Anthony Moore, in the years 2001 through 2004 which are at issue. (D.I.1 Complaint ¶7).  The legal issues include *respondeat superior* liability for only co-worker racial harassment, which is not severe or pervasive, and whether the prerequisites for constructive discharge exist.

In order to qualify the defendant as a covered "employer" under Title VII of the Civil Rights Act of 1964, plaintiff attempts to aggregate the defendant with a legally distinct company which plaintiff calls an "affiliate," P.T. Morgan Packaging Company ("the Packaging Company"), located in Arnold, Maryland. See 42 U.S.C. §§ 2000e(b). But defendant asserts that under current Third Circuit case law, the Paper Company and the Packaging Company are separate and distinct legal entities, neither meeting the fifteen employee threshold under Title VII. See Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003).

The record includes key substantive documents such as articles of incorporation, tax returns, contracts, and other documents showing the two corporations are not organizationally entangled and the Declaration of owner James B. Morgan, the Vice President of the Paper Company.

Attempts at mediation were futile and concluded in late October 2005.  Defendant contends the EEOC cannot prove a prima facie case and, in the court's own words,

should "do what is right, not just win." (D.I.33, (Telephone Conference before the

Honorable Kent A. Jordan (Nov. 9, 2005)) p.7 line 10; A001)[1].  The court further

indicated that if the EEOC discovers the defendant is not covered by Title VII, it should

"come forward and say, 'hey, this suit is over.'" Id.  This is defendant's Opening Brief

and Appendix in support of its motion for summary judgment.

## SUMMARY OF THE ARGUMENT

1.    Defendant is a small employer which does not meet the fifteen employee

threshold required under Title VII of the Civil Rights Act of 1964.  To evade this

threshold requirement, plaintiff attempts to aggregate the defendant, the Paper Company,

with a legally distinct company, the Packaging Company.

Summary judgment should be granted because plaintiff cannot prove that the

Paper Company, standing alone, satisfies the fifteen employee threshold under Title VII.

Plaintiff also cannot successfully aggregate two companies for purposes of achieving this

fifteen employee threshold.

2.    Under the Third Circuit dispositive case of Nesbit v. Gears Unlimited, Inc.,

347 F.3d 72 (3d Cir. 2003), the fifteen employee threshold under Title VII is a

substantive, rather than a jurisdictional, element of a Title VII claim.  Accordingly, the

case should be resolved under the summary judgment standard.

3. Under Nesbit, the Paper Company and the Packaging Company cannot be

aggregated because they do not satisfy the three part alternative test.  The Paper Company

---

[1]Simultaneous with this Brief, an Appendix is being filed in support of defendant's
Motion for Summary Judgment.  References to documents will, when necessary, first identify the
document and then reference the Appendix page. E.g. Morgan ¶1; A330.

and the Packaging Company are separate entities because the two Companies did not split

into two or more to evade coverage under Title VII, they are not in a parent-subsidiary

relationship, and they cannot be substantively consolidated under the factors considered

in Nesbit.

4.    The Paper Company and the Packaging Company cannot be substantively

consolidated because there is no substantial degree of unity between the two entities with

respect to ownership, management and business functions, they do not present themselves

as a single company such that third parties deal with them as one unit, they are not in a

parent-subsidiary relationship such that the parent covers the salaries, expenses, or losses

of its subsidiary, and they do not do business exclusively with the other.

## STATEMENT OF THE FACTS

**A. The Defendant Paper Company.**  The Paper Company is a small employer

incorporated in 1983 under the laws of the State of Delaware. (Certificate of

Incorporation; A009).  It also files taxes in this State. (Tax Returns for 2000 through 2005

(Bates D156-228); A044; A292).  The Paper Company has its own Board of Directors

and, as evidenced by the attached sample of recorded minutes, holds its own Board of

Directors' meetings. (A328).  Further, it has its own Corporate Bylaws, but due to the

passing of the Company's former attorney, they are lost. (Morgan ¶8; A331).

The Paper Company makes bales of paper from paper trash and recycled fiber in

Smyrna, Delaware. (Declaration of James B. Morgan Under 28 U.S.C. § 1746

("Morgan") ¶4; A330).  The Company ships these products out and also distributes some

finished goods. (Morgan ¶4; A330).  For example, the Paper Company produces "pads,"

such as dust pads used in the packing of printed forms. (Morgan ¶4; A330).

Peggy Morgan serves as the President of the Paper Company and is the owner of 51% of its stock. (Morgan ¶27; A335).  Peggy Morgan is currently very ill and does not participate in the day to day operations of the Company. (Morgan ¶29; A335).  James Morgan, the husband of Peggy Morgan, serves as Vice President and owns 49% of the Paper Company's stock. (Morgan ¶27; A334-335).  Gary Eberhard, General Manager, participates in the day to day operations of the Company. (Morgan ¶29; A335).

**B. The Defendant Does Not Employ Fifteen Employees.**  As is shown in the attached Analysis of Active Employees for the Paper Company for 2000 through 2004 ("Analysis"), the Paper Company *never* employed fifteen employees for twenty or more weeks as Title VII requires. (A272)  The total number of employees for any given week in years 2000 through 2004 has never exceeded eleven. (Analysis; A272).  The years at issue in the Complaint are 2001 through 2004. (D.I.1 Complaint ¶7).  The Analysis was complied from employee earning records for the years 2000 through 2004. (A272).  It shows the total number of employees active for all pay periods, whether or not they actually received a pay check.  Below is a simplified chart of the attached Analysis and it illustrates that at no point during the years 2000 through 2004 were any more than eleven employees listed as active for any given week.

| Dates | Highest Number of Employees | Total Number of Weeks with Highest Number of Employees |
|---|---|---|
| 1/1/00 - 12/23/00 | 11 | 2 |
| 12/30/00 -12/22/01 | 11 | 11 |
| 12/29/01 - 12/21/02 | 11 | 9 |
| 12/28/03 - 12/20/03 | 9 | 52 |
| 12/27/03 - 12/25/04 | 10 | 5 |

**C. Plaintiff's Attempt to Aggregate Two Separate Companies.** Because the Paper Company does not employ the requisite number of employees for twenty or more weeks, plaintiff attempts to aggregate the Paper Company with a separate and legally distinct company, the Packaging Company, which it calls an affiliate. (D.I.1 Complaint ¶3). In its Complaint, plaintiff acknowledged that the Paper Company, standing alone, cannot satisfy the fifteen employee requirement under Title VII. Id. Thus, it attempted to aggregate the Paper Company with the Packaging Company to meet the fifteen employee threshold. Id.

**D. The Other Separate and Legally Distinct Company**.

**1. The Packaging Company.** The Packaging Company is a small employer incorporated in 1982 under the laws of the State of Maryland. (Certificate of Incorporation; A028). It also files taxes in that State. (A117). The Packaging Company has its own Board of Directors and, as evidenced by the attached sample of recorded minutes, holds its own Board of Directors' meetings. (A329). It has its own Corporate Bylaws. (A015). The Packaging Company is a broker-distributer of corrugated boxes located in Arnold, Maryland. (Morgan ¶5; A331).

5

James Morgan serves as the President and Treasurer of the Packaging Company and participates in its day to day operations. (Morgan ¶28; A335). His wife, Peggy Morgan serves as the Vice President and Secretary. (Morgan ¶28; A335). She does not participate in the day to day operations of the Company. (Morgan ¶29; A335).

**2. The Two Companies Operate Separately.** Despite being owned and operated by the same family, the two Companies operate completely separate from each other. As evidenced by each Company's Certificate of Incorporation, sample Directors' Minutes and Corporate Bylaws, each Company observes and follows corporate formalities. (A009; A028; A328; A329; A015; Morgan ¶8; A331). Furthermore, each Company files taxes in their respective State of incorporation. (A044; A292; A117).

**(a) No Parent-Subsidiary Relationship.** The Paper Company and the Packaging Company are not in a parent-subsidiary relationship. (Morgan ¶15; A332). The Paper Company does not own all of the stock of the Packaging Company and the Packaging Company does not own all of the stock of the Paper Company. See U.S. v. Best Foods, 524 U.S. 51, 61 (1998).

**(b) Separate Handling of Personnel Matters.** Both Companies handle their own personnel matters such as the hiring and firing of employees and any disciplinary actions. (Morgan ¶16; A332). For example, the Paper Company's General Manager, Gary Eberhard, is responsible for the hiring and firing of employees for the Paper Company. (Morgan ¶16; A332). James Morgan is responsible for the hiring and firing of employees for the Packaging Company. (Morgan ¶16; A332-333). Neither person or Company participates in such personnel matters of the other. (Morgan ¶16;

A332-333).

        **(c) Treated as Separate by Third Parties.** The Paper Company and the Packaging Company are treated as two separate companies by third parties. For example, both Companies employ Paychex, Inc. to perform their payroll processes. (Contract for Payroll Processing with Paychex, Inc. for the Paper Company (D907-921); A252; Contract for Payroll Processing with Paychex, Inc. for the Packaging Company (D918-921); A263). If third parties treated them as a single company, there would be only one contract. Instead Paychex, Inc. has two, *separate* contracts with the Paper Company and the Packaging Company.

        **(d) Separate Health Plans with Different Providers.** Each Company also has its own health plan with different medical insurance providers. The Paper Company carries medical insurance with MAMSI Health Plans Insurance Company. (A193). The Packaging Company carries medical insurance with BlueCross Blue Shield Insurance Company. (A216).

        **(e) Separate Insurance and Filings for Worker's Compensation.** The Companies have separate policies for worker's compensation insurance. The Paper Company is insured by Selective Insurance Company of America. (Proof of Worker's Compensation Insurance Coverage ((Bates D430-437); A165). The Packaging Company is insured by CBIZ Benefits & Insurance Services. (Proof of Worker's Compensation Insurance Coverage ((Bates D796-799); A173). Additionally, the two Companies file unemployment insurance reports in their respective States. (A267; A269).

**(f) Separate Retirement Plans.** Both Companies have separate employee retirement plans with Morgan Stanley. (Proof of IRA Retirement Contributions for the Paper Company (D832-839); A177; Proof of IRA Retirement Contributions for the Packaging Company (D863-870); A185). Each Company *separately* contributes to these plans. This is evidenced by separately written checks addressed to Morgan Stanley. (Compare A177 with A185).

**(g) Different Lines of Production and Customers.** The Paper Company and the Packaging Company operate in distinctly different lines of production. (Morgan ¶6; A331) The Paper Company makes bales of paper from paper trash and recycled fiber, ships them out and distributes some finished goods. (Morgan ¶4; A330). The Packaging Company is a broker-distributor of corrugated boxes. (Morgan ¶5; A331).

Also, the Paper Company and the Packaging Company each have their own customer list and vendors. (Morgan ¶30; A335). Despite occasionally doing business with each other, neither Company is the *only* source of business for the other. (Morgan ¶30; A335). For example, the Paper Company produces a product called "tree wraps." (Morgan ¶31; A335). These "tree wraps" are purchased by Eastern Shore nurseries, such as Quail Run Nurseries, to protect the bottoms of trees by keeping animals from eating them. (Morgan ¶31; A335). The Packaging Company does not make, buy or sell these "tree wraps." (Morgan ¶31; A335). Also, when a Packaging Company customer wants a specialized corrugated box, it calls a vendor, such as International Paper, Southern Container, or Inland, and places an order. (Morgan ¶32; A335). The Packaging Company could not place such an order for boxes with the Paper Company because it does not have

8

a corrugator machine which is necessary to make corrugated boxes. (Morgan ¶32; A335).

**E. The EEOC Investigator's Conversation with Ms. Robbi Smith.**  On July 9, 2004, Mr. Mark Maddox, the EEOC investigator, allegedly had a conversation with Ms. Robbi Smith in accounting for the Packaging Company. (The EEOC Conversation Record of Mark Maddox with Robbi Smith; A271).  Mr. Maddox claims she stated the employer had a total of 19 employees. (A271).  Ms. Smith's statement was incorrect. (Morgan ¶37; A336).

First, Ms. Smith was not authorized to make any such statement. (Morgan ¶37; A336-337).  At that point in time, no studies of relevant original records had been done. (Morgan ¶37; A337).  After examination of the original records and documents it was determined that at no point in time from 2000 through 2004 were more than eleven employees actively employed by the Paper Company. (Analysis; A272).

Secondly, Mr. Maddox only asked Ms. Smith how many total employees there were for "P.T. Morgan." (The EEOC Conversation Record of Mark Maddox with Robbi Smith; A271).  Mr. Maddox was imprecise in his inquiry because he did not name which Company he was specifically addressing. (A271).  Thus, Ms. Smith did not answer based on the number of employees for the Paper Company specifically.  The imprecision of the question renders the answer unhelpful to the present analysis.

# ARGUMENT

## I.    STANDARD OF REVIEW

A motion for summary judgment shall be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Boyle v. County of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998); Fed.R.Civ.P. 56(c). "A fact is 'material' if, under the substantive law of the case, it is outcome determinative." Schoonejongen v. Curtiss-Wright Corporation, 143 F.3d 120, 129 (3d Cir. 1998). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the nonmovant's favor with regard to that issue." Id. So, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. The burden of demonstrating this is on the moving party. Watson v. Eastman Kodak Company, 235 F.3d 851, 854 (3d Cir. 2000). Once the moving party has demonstrated that there is no issue as to material fact, the nonmoving party has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Schoonejongen, 143 F.3d at 129.

Further, "[s]ummary judgment is appropriate when operation of judicial estoppel renders a litigant unable to state a prima facie case." Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001). While Federal Rule 56 allows a court to grant summary judgment when there is no issue of triable fact, it is important to remember the underlying "purpose of the rule is to eliminate a trial in cases where it is unnecessary and would *only cause delay and expense*." Goodman v. Meade Johnson & Company, 534 F.2d 566, 573 (3d Cir. 1976) (emphasis added).

10

II.    **AS A MATTER OF LAW, THE PROPER STANDARD FOR DISMISSAL IS SUMMARY JUDGMENT.**

Title VII of the Civil Rights Act of 1964 prohibits companies employing "fifteen or more" persons from discriminating on the basis of race in hiring, discharge, compensation, or terms of employment. 42 U.S.C. §§ 2000e(b), 2000e-2(a)(1).  The dispositive Third Circuit case, Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003), rendered the fifteen employee definition a substantive rather than a jurisdictional element of a Title VII claim. Id. at 83; see also Carr v. Borough of Elizabeth, 121 Fed.Appx. 459, 460 (3d Cir. Feb. 2, 2005) (affirming Nesbit ruling that the fifteen employee threshold was substantive rather than jurisdictional).  Accordingly, the present case should be resolved under the substantive summary judgment standard. Nesbit, 374 F.3d at 84.

III.   **P.T. MORGAN PAPER COMPANY DOES NOT HAVE FIFTEEN EMPLOYEES AND IS NOT A COVERED EMPLOYER UNDER TITLE VII.**

A covered employer, as defined in Title VII, is one "who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).   The record evidence shows the Paper Company *never* employed fifteen employees for the years 2000 through 2004. (Analysis; A272).  In fact, the total number of employees for any given week in years 2001 through 2004, which are at issue, never exceeded eleven. (Analysis; A272).  Thus, standing alone, the Paper Company is not a covered employer as defined by Title VII. Additionally, even plaintiff acknowledged in its Complaint that the Paper Company,

11

standing alone, cannot be deemed an employer as defined by Title VII when it attempted

to aggregate it with a legally separate and distinct company. (D.I.1 Complaint ¶3).

IV.    **AS A MATTER OF LAW, UNDER THE <u>NESBIT</u> FRAMEWORK THE PAPER COMPANY AND THE PACKAGING COMPANY ARE SEPARATE AND DISTINCT LEGAL ENTITIES AND CANNOT BE AGGREGATED TO MEET THE FIFTEEN EMPLOYEE THRESHOLD OF TITLE VII.**

Because the Paper Company cannot be held liable under Title VII, in order to

satisfy the fifteen employee threshold, plaintiff attempted to aggregate the Paper

Company with the Packaging Company. (D.I.1. Complaint ¶3).  But under the framework

established by the Third Circuit in <u>Nesbit</u>, these two separate and legally distinct

companies cannot be aggregated.  And without aggregating the two companies, plaintiff

cannot prove a prima facie case.

Under the <u>Nesbit</u> framework, the two companies are separate entities.  The Third

Circuit here formulated a three part alternative test for determining when multiple

companies should be aggregated for purposes of reaching the fifteen employee threshold.

The framework is composed of three alternative parts: (1) whether a company has split

into two or more to evade Title VII, (2) whether a parent company directed their

subsidiary's act, or (3) whether the two companies can be substantively consolidated. 347

F.3d at 86.

1.    <u>**A Single Company which Splits into Two or More Companies to Evade Coverage Under Title VII**</u>

When a single company has "split itself into multiple entities to evade coverage

under Title VII," it is considered a single company for purposes of meeting the fifteen

employee threshold <u>Id.</u> at 86.  To prove this, the plaintiff must make a prima facie case

by showing the two businesses split for purposes of evading coverage under Title VII and

this split was a substantial motivating factor. <u>Id.</u>  Only then does the burden shift to the

defendant to rebut the plaintiff's offer of proof. <u>Id.</u>

Here, the plaintiff is unable to make a prima facie case because the Paper

Company and the Packaging Company were *never* a single company.  Further, there is no

record evidence indicating such an assertion. <u>Id.</u> at 88.  The Paper Company was not an

offshoot from the Packaging Company and the Packaging Company was not an offshoot

of the Paper Company.  To the contrary, record evidence also proves the Companies have

never held themselves out as one entity.  For example, the Paper Company is incorporated

under the laws of the State of Delaware while the Packaging Company is incorporated

under the laws of the state of Maryland. (A009).  Also, both Companies have separate

bylaws and hold separate Board of Director's Meetings (A328; A329; A015; Morgan ¶10;

A332).  The Morgan declaration also specifically asserts that no split ever happened.

(Morgan ¶14; A332).

Further, as the court pointed out in <u>Nesbit</u>, the fact that two Companies produce

different products is an indication that they never held themselves out as a single entity.

<u>Id.</u>  Here, the Paper Company produces an entirely different product than the Packaging

Company. (Morgan ¶¶4-6; A330-331).  Bales of paper produced by the Paper Company

are very different from corrugated boxes. (Morgan ¶4-6; A330-331).  Furthermore,

customers searching for bales of paper contact the Paper Company offices in Delaware

and customers searching for corrugated boxes contact the Packaging Company offices in

13

Maryland. (Morgan ¶19; A333). Therefore, taking all the record evidence into account, a claim that the Paper Company and the Paper Company were one entity that split to evade anti-discrimination laws is "implausible" to say the least. <u>Id.</u>

### 2.    <u>A Parent Company Directing a Subsidiary Company's Act</u>

Alternatively, companies in a parent-subsidiary relationship are considered a single employer when the parent directs the subsidiary to perform the alleged discriminatory act in question. <u>Id.</u> at 88. But the Paper Company and the Packaging Company are not in a parent-subsidiary relationship because neither owns all of the stock of the other. (Morgan ¶15; A332); <u>see</u> <u>U.S. v. Best Foods</u>, 524 U.S. at 61 (holding a parent corporation is "so-called because of control through ownership of another corporation's stock"). In fact, plaintiff does not even make an allegation in the Complaint that the two companies are in a parent-subsidiary relationship. Therefore, "the second situation for combining employees...does not exist." <u>Nesbit</u>, 347 F.3d at 88.

### 3.    <u>Substantive Consolidation</u>

In the absence of the first two situations, the court should look to the factors used in a bankruptcy context for assistance in deciding when to substantively consolidate two or more entities. <u>Id.</u> at 86. The primary purpose here is to determine if the companies' affairs are "so interconnected that they collectively caused the alleged discriminatory employment practice." <u>Id.</u> "More colloquially, the question is whether the 'eggs' - consisting of the ostensibly separate companies - are so scrambled that we decline to unscramble them." <u>Id.</u> The court also noted that this remedy is equitable in nature and is "*difficult to achieve.*" <u>Id.</u> (emphasis added).

14

Taking into account the factors used in a bankruptcy context, the Third Circuit

here adopted an open-ended equitable inquiry. Id. at 87.  Where the inquiry in a

bankruptcy context focuses on the financial entanglement, the inquiry in a Title VII

context focus on the degree of "operational entanglement." Id.[2]  To determine operational

entanglement, the relevant factors include: (1) the degree of unity between the entities

with respect to ownership, management, and business functions, (2) whether they present

themselves as a single company such that third parties dealt with them as one unit, (3)

whether a parent company covers the salaries, expenses, or losses of its subsidiary, and

(4) whether one entity does business exclusively with the other. Id.  The plaintiff must

show that substantive consolidation would make sense under these factors. Id. at 88.  But

as the evidence in the record shows, under these factors, the Paper Company and the

Packaging Company should not be substantively consolidated, and it defies common

sense to do so.

### (a)     The Degree of Unity Between the Two Entities

First, aside from both Companies being owned by members of the same family,

record evidence shows there is no degree of unity between the entities. (Morgan ¶25;

A334).  For example, the two Companies have different management. Id. at 88;

(Employee Organizational Chart for the Paper Company Aug. 2005 (D235); A042;

Employee Organizational Chart for the Packaging Company Aug. 2005 (D236); A043).

---

[2] The Third Circuit noted "it is not that considerations showing financial entanglement are
not relevant in Title VII cases...we assume that financial entanglement will be present less
frequently in Title VII cases than in bankruptcy cases and will be harder for a Title VII plaintiff
to prove..." Nesbit, 347 F.3d at 87.

Each Company separately handles its own personnel matters, such as the hiring and firing of employees and any personnel or disciplinary actions. (Morgan ¶16; A332-333).  Also, the Companies did not ignore corporate formalities. (Morgan ¶10; A332); <u>Nesbit</u>, 347 F.3d at 89.  They also file separate tax returns in their respective states. (A044; A292; A117).

The Third Circuit in <u>Nesbit</u> makes it quite clear that common ownership is not enough to show operational entanglement. <u>Id.</u>  The Third Circuit held that operational entanglement does not exist even when the president of two companies participates occasionally in their management. <u>Id.</u>  "[The person's] directorships are likely incidental to his stock ownership, as is often the case among closely held corporations." <u>Id.</u> n11.  "[M]anagement [of the two companies] [is] insufficient, without more, to warrant substantive consolidation." <u>Id.</u>  In the case at hand, the Paper Company and the Packaging Company are managed by two entirely different people, Gary Eberhard and James Morgan. (Morgan ¶29; A335).  In the Third Circuit's own words, "*common ownership...[is an] insufficient bas[is]* to disregard the separate corporate forms of [the two companies]." <u>Id.</u> at 89 (emphasis added).  Since all record evidence shows the Companies are separate entities, and common ownership alone is not sufficient, no degree of unity between the two Companies exists.  So the first factor for substantial consolidation does not exist.

      **(b)**      **Whether Two Companies are Treated as a Single Company by Third Parties**

Second, the two Companies do not present themselves as a single company such

16

that third parties deal with them as one unit. <u>Id.</u> at 87.  For example, both the Paper

Company and the Packaging Company use Paychex, Inc. for their payroll services.

(A252; A263).  But each Company has its own contracts and accounts with Paychex, Inc.

(A252; A263).  Also, each Company has separate health plans with different medical

insurance providers. (Morgan ¶18; A333).  Further, each Company writes separate

checks, (compare A177 with A185), files separately for worker's compensation

insurance, (A165; A173), and has separate retirement benefit plans, (A177; A185).  As

further proof, they keep separate financial records and have separate bank accounts.

(Morgan ¶20; A333-334).  As is shown by the record evidence, third parties do not deal

with the two Companies as one unit.  Accordingly, the second factor for substantial

consolidation does not exist either.

**(c)     Whether a Parent Company Covers Salaries, Expenses, or
          Losses of its Subsidiary Company**

Third, since these Companies are not in a parent-subsidiary relationship, neither

Company covers the salaries, expenses, or losses of the other. (Morgan ¶15; A332).

Because of this, the third factor for substantial consolidation does not exist.

**(d)     Whether the Two Companies do Business Exclusively
          with the Other**

Finally, neither Company does business exclusively with the other. (Morgan ¶30;

A335).  While the two Companies may do some business with the other, each respective

Company has its own customer list and vendors. (Morgan ¶30; A335).  For example, the

Paper Company produces a product called "tree wraps" which it sells to Eastern Shore

nurseries, such as Quail Run Nurseries. (Morgan ¶31; A335).  The Packaging Company

17

does not make, buy or sell these "tree wraps." (Morgan ¶31; A335). Also, when a Packaging Company customer wants a specialized corrugated box, it calls a vendor, such as International Paper, Southern Container, or Inland, and places an order. (Morgan ¶32; A335). The Paper Company does not have a corrugator machine, which is necessary to make corrugated boxes, so the Packaging Company could not place an order with them. (Morgan ¶32; A335). Since the Paper Company and the Packaging Company are not the sole customers of the other, the fourth factor for substantial consolidation does not exist.

Thus, plaintiff cannot show that any of the four factors exist. Nesbit, 347 F.3d at 88. There is no degree of unity between the two entities, the two Companies do not present themselves as a single company, such that third parties deal with them as one unit, they are not in a parent-subsidiary relationship, and they do not do business exclusively with the other. Id. at 87.

**4.    The Two Companies Cannot be Aggregated**

Therefore, the Paper Company and the Packaging Company do not meet the Nesbit framework for aggregation under any theory. They did not split into two or more to evade coverage under Title VII, they are not in a parent-subsidiary relationship such that the parent company directed the subsidiary's act, and the two Companies cannot be substantively consolidated. Id. at 86.

Not only did plaintiff fail to plead any contention related to the above in its Complaint, but now it has no evidence that the two Companies operate as one entity. In fact, as a matter of law, all record evidence proves the exact opposite. In Nesbit, the court held that common ownership without more, is insufficient to "disregard the separate

18

corporate forms of [the two companies]." Id. at 89.  Much like the two companies in the Nesbit case, the Paper Company and the Packaging Company, despite being owned by the same family, operate independently. Id. at 75.  Yet in an attempt to show "operational entanglement," plaintiff continuously refers to P.T. Morgan Paper Company as an affiliate of P.T. Morgan Packaging Company, without any factual basis for the contention.  As this brief has demonstrated, no such basis exists.  Under Nesbit, bare allegations alone are not sufficient to aggregate the two companies. Id.  And since the Paper Company, standing alone, does not have fifteen employees, plaintiff, as a matter of law, cannot prove a prima facie case under Title VII.

## CONCLUSION

Defendant should be granted summary judgment.  Indeed, as the Court suggested, the government should "do what is right," (D.I.33, (Telephone Conference before the Honorable Kent A. Jordan (Nov. 9, 2005)) p.7 line 10; A001), and end this persecution of a small employer Congress never intended to be under a costly Federal mandate.

19

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**


/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Attorneys for Defendant


Dated: December 14, 2005

20

## CERTIFICATE OF SERVICE

I, Thomas S. Neuberger, being a member of the bar of this Court do hereby certify

that on December 14, 2005, I electronically filed this **Brief** with the Clerk of the Court

using CM/ECF which will send notification of such filing to the following:

> M. Jean Clickner
> Senior Trial Attorney
> Equal Employment Opportunity
> Commission
> 1001 Liberty Avenue, Suite 300
> Pittsburgh, PA 15222
> (412) 644-6439
> jean.clickner@eeoc.gov
>
> Seth M. Beausang
> Asst. U.S. Attorney
> The Nemours Building
> 1007 Orange Street, Suite 700
> Wilmington, DE 19899
> (302) 573-6277
> seth.beausang@usdoj.gov

> /s/Thomas S. Neuberger
> **THOMAS S. NEUBERGER, ESQ.**

PTMorgan/Briefs/Summary Judgment.final

21