## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) CIVIL ACTION NO. 04-1304 (KAJ) |
| v. | ) |
|  | ) |
| P.T. MORGAN PAPER CO., affiliated with P.T. MORGAN PACKAGING COMPANY, | ) |
|  | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

### PLAINTIFF EEOC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### and
### BRIEF IN SUPPORT OF ITS
### CROSS-MOTION FOR SUMMARY JUDGEMENT

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

JACQUELINE H. MCNAIR, REGIONAL ATTORNEY
JUDITH O'BOYLE, SUPERVISORY TRIAL ATTORNEY
M. JEAN CLICKNER, SENIOR TRIAL ATTORNEY
Equal Employment Opportunity Commission
Liberty Center, Suite 300
1001 Liberty Avenue
Pittsburgh, PA 15222
(412) 644-6439

Local Counsel:
**UNITED STATES ATTORNEY
DISTRICT OF DELAWARE**

SETH M. BEAUSANG, ASST. U.S. ATTORNEY
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, Delaware 19899
Del. Bar ID No. 4071
(302) 573-6277

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

P.T. Morgan Paper Company and P.T. Morgan Packaging Company
    are an Integrated Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

COUNTER-STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      The facts of record are sufficient to conclude as a matter of fact and law that
      P.T. Morgan Paper Company and P.T. Morgan Packaging Company are an
      Integrated Enterprise for purposes of Title VII. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          A.    Packaging employees provide administrative, financial, and personnel
               support for the Paper company. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          B.    Packaging is not compensated by Paper for the work provided to
               Paper by Packaging employees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          C.    Packaging employees handle payroll matters for Paper . . . . . . . . . . . . . . 10
          D.    Packaging and Paper corporate offices are housed at the same location,
               they use the same facsimile telephone number and Packaging underwrites
               the overhead cost of Paper's corporate offices. . . . . . . . . . . . . . . . . . . . . . 11
          E.    Packaging and Paper share joint liability for financial loans. . . . . . . . . . 11
          F.    Paper and Packaging employees use the same personnel policy. . . . . . . 12
          G.    Packaging and Paper have an intertwined identity to the outside world... . .
               . 12
          H.    Packaging and Paper jointly negotiated a retirement plan for their
               employees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          I.    A Paper employee received a bonus from the Packaging company. . . . . 13
          J.    A Packaging employee works onsite at Paper at least one day a week. . . 14
          K    James Morgan provides administrative and personnel control for both
               Paper and Packaging. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          L.    Companies' boards of directors intermingle companies' business at meetings.
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          M.   Intermingling of business with third parties. . . . . . . . . . . . . . . . . . . . . . . 16
          N.    Packaging Company employees are not aware of the corporate
               distinctions between Paper and Packaging. . . . . . . . . . . . . . . . . . . . . . . . 17
          O.    Record Contains Direct Evidence of Intermingling of Management Functions.
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    **I.**      **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    **II.**     **STATEMENT OF RELEVANT LAW** . . . . . . . . . . . . . . . . . . . . . . . . . 18

    **III.**    **APPLICATION OF THE FACTS TO THE LAW** . . . . . . . . . . . . . . . . . . . 23

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**TABLE OF CITATIONS OF CASES, STATUTES, RULES,
TEXTBOOKS AND OTHER AUTHORITIES**

<u>**FEDERAL CASES**</u>                                                        <u>**Page**</u>

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Artis v. Francis Howell North Band Booseter Ass'n, Inc., 161 F.3d 1178, 1184 (8th Cir. 1998)  19

Battistone v. Sam Jon Corp., 2002 U.S. Dist. LEXIS 19399 (E.D. PA 2002) . . . . . . . . . . . . . . 22

Bennett v. Picarri Press, Inc., 2005 U.S. Dist. LEXIS 1905 (E.D. PA 2005)  . . . . . . . . . . . . . . 22

Ferrell v. Harvard Industries, Inc. et al., 2001 U.S. Dist. LEXIS 17358 *70-71 (E.D. PA 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

Gonzalez v. Comcast Corporation, et al., 2004 U.S. Dist. LEXIS 14989 (D. DE 2004) . . . . . . . 21

Gorman v. Imperial Metal & Chemical Co., 1999 U.S. Dist. LEXIS 1810 (E.D. PA 1999) . . . . 18

Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1184 (10th Cir. 1999) . . . . . . . . . . . . . . . . . 19

Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3rd Cir. 2003)  . . . . . . . . . . . . . . . . . .   19-21, 23-24

Nunez v. Temple Professional Associates, et al., 2005 U.S. Dist. LEXIS 2776 *7 (E.D. PA 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pearson v. Component Tech. Corp., 247 F.3d 471, 486 (3rd Cir. 2001) . . . . . . . . . . . . . . .   19,22

Stewart v. Rutgers, 120 F.3d 426, 431 (3rd Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Trevino v. Celanese Corp.,701 F.2d 397, 403-04 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 20

## NATURE AND STAGE OF THE PROCEEDINGS

On September 28, 2004, the Commission filed this case under Title VII of the Civil Rights Act of 1964, alleging, *inter alia,* that Charging Party Anthony Moore and a class of African American employees of Defendant[1] (referred to collectively as Claimants), had been subjected to a racially hostile work environment, in the form of racially insensitive and offensive remarks by their supervisor that continued, uncorrected, for years, as well as the distribution of an extremely racially offensive document. At the relevant time, Defendant had no discrimination or anti-harassment policy in place. Anthony Moore, however, repeatedly informed the perpetrator of the offensive nature of his conduct and complained to two different general managers. Defendant failed to take prompt and effective action to remedy the situation. All actions complained of occurred at Defendant's operation in Smyrna, Delaware.

On December 14, 2005, prior to the close of discovery, Defendant filed a Motion for Summary Judgment contending: (1) that P.T. Morgan Paper Company, alone, does not employ fifteen or more employees; and (2) that P.T. Morgan Paper Company (referred to hereinafter as "Paper") and P.T. Morgan Packaging Company (referred to hereinafter as "Packaging") cannot be aggregated to meet the fifteen employee threshold. The Commission has filed a Response in Opposition to Defendant's Motion as well as a Cross Motion for Summary Judgment. In neither its Response in Opposition nor in its Cross Motion does the Commission contend that the Paper company, alone, employs fifteen or more employees. Rather, the Commission contends that the

---

[1] The Claimants represented by the Commission are: Anthony Moore, Carlyle Moore, Patrick Moore, and Bernard Tingle.

employees of both companies should be aggregated to reach the fifteen employee threshold as those companies constitute an integrated enterprise for purposes of Title VII.

### P.T. Morgan Paper Company and P.T. Morgan Packaging Company are Operated as an Integrated Enterprise

The undisputed evidence of record conclusively supports the Commission's contention that the Paper Company and the Packaging Company are an integrated enterprise for purposes of Title VII. A review of the uncontested evidence of record, fully set forth below, will show that while maintaining certain corporate formalities of distinctiveness, these two companies are jointly operated in many significant respects.

Despite the fact that Defendant filed its dispositive motion so as to thwart the Commission's ability to engage in full and complete discovery of the nature of the relationship between the two companies prior to responding to Defendant's motion, the documents supplied by Defendant clearly support a finding that the successful operation of the Paper business relies on the fact that Packaging employees provide a significant amount of administrative, clerical, and personnel support services; that Packaging is not compensated by Paper for the work provided to it by Packaging employees; that Packaging offices and Paper headquarters are housed in the same small building located on the residential premises of the owners Mr. and Mrs. James Morgan; that Paper produces a product which is marketed by Packaging company employees; that Paper's billing functions are handled by Packaging employees; that Packaging and Paper have joint financial liability for loans from financial institutions; that Paper and Packaging employees are subject to the same personnel policies; that the companies present themselves to the world as the J.B Morgan Companies; that Packaging employees have negotiated health insurance policies for Paper employees; that at least one Paper employee

received a bonus from the Packaging company; and that, contrary to Defendant's contention, Mr. James Morgan asserts significant administrative control over the Paper personnel matters while admittedly acting as President and chief of operations for Packaging.

The Claimants also inform that a Packaging employee regularly works onsite at Paper's Smyrna, Delaware site at least one day a week.

The limited discovery conducted in this case has yielded strong evidence that there are sufficient undisputed material facts that militate against summary judgment for the Defendant. And, as a matter of fact and law, these undisputed facts are so compelling as to provide sufficient information for the Court to make a definitive finding of sufficient intermingling of administrative operations and control as to establish that P.T. Morgan Paper Company and P.T. Morgan Packaging Company are a "single employer" or an "integrated enterprise" for Title VII purposes.

## SUMMARY OF THE ARGUMENT

1.    Based on the information that has been made available to the Commission, to date, it does not contend that, standing alone, P.T. Morgan Paper Company engages 15 or more employees.

2.    The Commission agrees that, under *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003), *cert. denied,* 541 U.S. 959 (2004), the fifteen employee threshold under Title VII is a substantive element of a Title VII claim and is properly addressed by summary judgement.

3.    The undisputed facts of record establish as a matter of fact and law that, under the

"open-ended, equitable inquiry" established by the Court in *Nesbit*, P.T. Morgan Paper Company and P.T. Morgan Packaging Company are jointly operated so as to constitute an integrated enterprise for purposes of Title VII.

4.    In the alternative, the Commission contends that the facts of the incomplete record are sufficient to raise a reasonable factual question that the two companies constitute an integrated enterprise for purposes of Title VII such as would defeat the Defendant's pending motion for summary judgment.

## COUNTER-STATEMENT OF MATERIAL FACTS

**The facts of record are sufficient to conclude as a matter of fact and law that P.T. Morgan Paper Company and P.T. Morgan Packaging Company are an Integrated Enterprise for purposes of Title VII**

The Commission's contention that P.T. Morgan Paper Company and P.T. Morgan Packaging Company are an integrated enterprise is based on undisputed documentary evidence of record.[2] Despite the fact that Defendant filed the instant motion so as to thwart the Commission's ability to engage in full and complete discovery of the nature of the relationship between the two companies, the documents supplied by Defendant, coupled with additional evidence referenced herein and included in the Commission's Appendix, clearly support an finding which is sufficient to show an integrated enterprise under the legal test enunciated in *Nesbit*.

---

[2]The documents which support the Commission's position are primarily those produced by Defendant during the Commission's investigation of the underlying charge or discrimination or during discovery in this litigation. Those documents are Bate stamped "D***". Because the documents were produced by Defendant, it cannot now object to the authenticity of such documents.

For the Court's convenience, following is a list of relevant current and former employees of both Paper and Packaging who are referenced in the Commission's Brief[3]:

**P.T. Morgan Packaging Company:**
James Morgan, Co-owner and President
Rose Grabowski, Office Manager
Linda Reppenhagen, Customer Service
Cecelia "Robbi" Smith, Accounting
Ginger Andrews, Accounting Supervisor
Linda M. Groves, Accounting Supervisor

**P.T. Morgan Paper Company:**
James Morgan, Co-owner and Vice President
Gary Eberhard, General Manager (1/1/03 to present)
Eugene Fox, General Manager (1/1/00 to 12/31/02)
Jerry Broussard, Pad Operation Team Leader
Douglas Goodermuth, Warehouse Team Leader
Anthony Moore, Claimant and former employee
Carlyle Moore, Claimant and current employee
Patrick Moore, Claimant and current employee
Bernard Tingle, Claimant and current employee

(EEOC Exs. A & B)[4]

Assuming that the two companies are an integrated enterprise, it is undisputed that the combination of their employees meets or exceeds the fifteen employee element of a Title VII claim.

(Ex. A and B)

A.    **Packaging employees provide administrative, financial, and personnel support for the Paper company**

---

[3]This listing of employees is not intended as a complete employee list for the two companies. It is provided here for the Court's convenient reference and contains only employees who are mentioned in the Commission's Brief.

[4] "Ex. __" or "Exhibit __" refers to documents contained in the EEOC's Appendix filed simultaneously with the EEOC's Cross Motion for Summary Judgment and its Answering Brief and Brief in Support of Its Motion for Summary Judgment.

In Interrogatory No.2 of it's Third Set of Interrogatories to Defendant, the Commission asked Defendant to identify all Packaging employees during the relevant period of time and, *inter alia*, to "identify which, if any, of this employees' duties relate to the management of P.T. Morgan Paper Company." (Ex. EE)  Defendant disingenuously responded that no Packaging employee performed duties related to the management of the Paper company.  (*Id.*)  Following, based on documents produced by Defendant, the Commission will show that Packaging employees provide significant administrative, clerical, accounting and management services for the operation of the Paper company.

Exhibit F reveals that, in 1989, a Packaging employee, Linda M. Groves, communicated with the Harford Insurance company on behalf of a worker's compensation claim of a Paper employee. Moreover, the worker's compensation claims form for Mr. Goodermuth lists P.T. Morgan **Packaging** Company, not Paper, as the employer. (Ex. F, D349)  Yet, Defendant has identified Mr. Goodermuth as Paper employee. (Ex. B)

Exhibit G reveals that in 2004, a Packaging employee, Robbi Smith, using P.T. Morgan Packaging Company letterhead, communicated with an agent of Paper's liability insurance carrier regarding an audit and amounts due back to Paper.  That is, a Packaging employee was providing accounting and administrative services for Paper.

Exhibit H, a 2004 document from Paper's health insurance company, Optimum Choice, is addressed to "P.T. Morgan Paper Co.  Att: Ginger [Andrews]/Robbi [Smith]/Gary [Eberhard], PO Box 5011, Severna Park, MD 21146."  None of the documents supplied by Defendant reveal a Paper employee with the first name of "Ginger" or "Robbi."  It is undisputed that Packaging employs or employed Ginger Andrews and Robbi Smith.  Thus, the only reasonable assumption from these facts

Page 6

is that Ginger and Robbi are or were Packaging employees. Of the three individual copied on the document, only Gary Eberhard is a Paper employee.  Also of note is that Optimum Choice used a Severna Park, Maryland post office box, rather than Paper's Symrna, Delaware business address. This use of a post office box in Severna Park was obviously for the convenience of Packaging employees who were also using a Servema Park post office box, with the same zip code, to conduct business. (Ex. N)   Moreover, Defendant has produced no documentation to show that it attempted to disabuse a third party of the corporate separateness of the two companies.

Exhibit I, a May 24, 2004 document listing Paper company employees, has a hand written note on the bottom: "Gary/Rose, Please get employees to ok info asap. (To be returned to Pay (check mark, check mark) [indicating Paychex] 6/17/04)"  Payrolls by Paychex, Inc. (generally referred to as "Paychex") is the payroll service used by both Packaging and Paper.  (Ex. SS)   Rose Grabowski is a Packaging employee.   Gary Eberhard is Paper's General Manager (Ex. B) and is its Human Resources Director. (Ex. J)  Paper has identified no employee other than Eberhard who serves in an administrative capacity.  Thus, we must assume that the handwritten note was by a Packaging employee and, more importantly, it shows that a Packaging employee was charged with responsibility for obtaining the correct personnel information of Paper employees to supply to Paper's payroll processing company.

Group Exhibit M reveals that Employment Eligibility Verification forms for five (5) Paper employees were completed and/or signed off by Packaging employee, Robbi Smith, in 2003.

Various documents support an inference that Paper and Packaging shared office products, as well as personnel.  Exhibit N, a facsimile cover sheet, with Packaging letterhead, reflects that Paper company business was being transacted.  The second page of Exhibit N (D015) shows

Packaging employee Ginger Andrews as the contact person to obtain tax information for a Paper employee Anthony Moore.   Exhibit O also reflects business for Paper employee Anthony Moore was being transacted by Packaging employee Ginger [Andrews] on Packaging letterhead.

Exhibit U reveals that Packaging employees, Ginger Andrews and Robbi Smith, have provided  employment verification for Paper employees to public agencies such as the Delaware Health and Social Services Division and the Worchester County Department of Social Services.

Several documents show that Ginger Andrews and Linda Groves, both Packaging accounting supervisors, had significant responsibility for maintaining personnel information relating to Paper employees. (Group Ex. Z)     The facsimile line on top of Exhibit Z (D144) shows that Paper and Packaging share a facsimile telephone number.   This page also shows Packaging's Ginger Andrews requested up-to-date personnel information for a Paper employees.  **Exhibit Z (D330) shows a Packaging employee, Ginger Andrews, identifying herself as "Accounting Supervisor, PT Morgan *Paper* Co. Inc."** when dealing with Paper's worker's compensation insurance company, Selective Insurance.  Exhibit Z (D332) reveals that  Packaging employee Ginger Andrews kept time records for Paper employees, here Douglas Goodermuth.

Of extreme importance in showing an intermingling of personnel management between Packaging and Paper, Exhibit Z (D315) reveals that Packaging employee, Robbi Smith, was responsible to maintaining records about Paper employees' anti-discrimination training.  At the top of this document is hand-written:  "Robbi - has everyone @ Smyrna (Paper's location) signed anti-discrimination memo."   Subsequent handwritten words explain that Doug Goodermuth had not yet signed.   The last hand-written entry reads:  "Robbi – we'll wait until he comes back to work, if he does.  Had problem last week."   This document unfailingly reveals that Package's Robbi was

Page 8

charged with assuring that all Paper employees were aware of the newly created anti-discrimination policy.

Exhibit Z (D335) shows that a Packaging employee, Ginger Andrews, verified a Paper employee's employment to a financial institution, the Wilmington Trust Company.  Exhibit Z (D345, D066) show that Packaging employees maintained current address information for Paper employees. Exhibit Z (D346, 353, 144, 147) reveals that Packaging employees maintain workers' compensation records for Paper employees.  Again, of extreme interest, Exhibit Z  (D353), a workmen's compensation claim form for Paper employee Doug Goodermuth identifies his employer as P.T. Morgan Packaging Company.

Robbi Smith, Packaging employee, provided Paper general manager Gary Moore with "a description of business conducted at P.T. Morgan Paper,"  information he apparently  needed to obtain a "better insurance rate."   (Ex. BB)  Note, in the body of this letter, Packaging employee Robbi Smith  wrote: "**Our** location in Smyrna, Delaware ..." and "**we** do not actually recycle..."   If the two companies are being run at arms-length, one must wonder how a Packaging employee can identify the nature of the Paper business better that its General Manager.  Moreover, her use of the term "our" and "we" clearly indicates a consciousness on the part of this Packaging employees that the companies were run as one and the same.

Exhibit CC reveals that someone other than General Manager Gary Eberhard set up a meeting for Paper employees to hear a Morgan Stanley representative discuss an IRS 401K retirement plan. The memo, on Paper letterhead,  is addressed to Mr. Eberhard.  Paper has identified no employees who would provide administrative functions such as the preparation of this memo.  Thus, based on the entire record, it is safe to assume that the memo was prepared by a Packaging employee.

A comparison of Paper's letterhead (Ex. CC), which shows that its "Accounting" is located at a post office box in Severna Park, Maryland, with Packaging's letterhead (Ex. N) reveals that they are **both use a post office box** in Severna Park, Maryland and that they both list the **same telephone number and fax number**. Paper has never named any employee identified as an accountant or who was located in an accounting department in Severna Park, Maryland. The only reasonable inference from these facts is that, in fact, the Packaging company's accounting department provides accounting services for the Paper company.

**B.    Packaging is not compensated by Paper for the work provided to Paper by Packaging employees**

According to Defendant, there are no contracts between Paper and Packaging for services. (Ex. DD) Moreover, in its Opening Brief[5] (Op.Br. at 17), Defendant states, "neither Company covers the salaries, expenses, or losses of the other."

**C.    Packaging employees handle payroll matters for Paper**

Both Paper and Packaging use a payroll service called Paychex. Documents show that Packaging employees handle, at minimum, communications with Paychex for Paper employees. Exhibit O shows communication with Paychex by Packaging employee Ginger Andrews regarding direct deposit documentation for Paper employee Anthony Moore. Likewise, Exhibit V shows that Packaging employee Robbi Smith provided Paychex with information for Paper employee Bernard Tingle. (Exhibits X and Y) reveal detailed involvement by Ms. Smith with Paychex in a payroll problem relating to a Paper employee, Bernard Tingle.

---

[5]Defendant's Opening Brief in Support of Summary Judgment will be referred to hereafter as "Op.Br." or "Opening Brief."

**D**.    **Packaging and Paper corporate offices are housed at the same location, they use the same facsimile telephone number and Packaging underwrites the overhead cost of Paper's corporate offices**

Interestingly, although the Paper production site is in Smyrna, Delaware and its management staff is *allegedly* located there (see Defendant's Br. at 15), Paper lists its corporate headquarters as being located at 525 Broadwater Road, Arnold, Maryland (Ex. HH, II)[6], the same location as the corporate offices of the Packaging company.

According to a Dunn & Bradstreet report, the Packaging company leases a 3,000 square foot, two-story brick building at 525 Broadwater Road, located in a residential section on a side street. (Ex. FF)   Exhibit II also reveals that both Packaging and Paper use the same Broadwater Road address.   In response to the Commission's Request for Admissions (First Set), Defendant denied that Paper owns or leases space at 525 Broadwater Road, Arnold, Maryland. (Ex. GG)   Thus, it appears that Paper's use of office space at the Arnold, Maryland location is financially underwritten by Packaging which leases the space.

**E.    Packaging and Paper share joint liability for financial loans**

A Dun & Bradstreet report reveals that Paper and Packaging have joint responsibilities for loans from various lenders.   (Ex. FF)   Due to the fact that discovery is not complete, the Commission has been unable to determine the exact nature of the companies' financial intertwining.

**F.    Paper and Packaging employees use the same personnel policy**

---

[6]Prior to moving to the Arnold, MD address, both Paper and Packaging shared corporate offices at Severna Park, MD.

Exhibit T reveals that both Paper and Packaging employees are subject to identical time and

attendance policies, as well as annual holidays.  This fact supports the Commission's contention that

these companies are jointly managed with regard to certain personnel issues.

### G.     Packaging and Paper have an intertwined identity to the outside world

Packaging describes itself as a "broker/distributor of cardboard boxes/pads." (Ex. D) Yet,

Packaging does not operate independently any facility which distributes a product.  According to its

Workers Compensation Payroll Report (Ex. D), Packaging employed only "salespersons, collectors,

messengers, clerical employees and one janitorial employee."  Rather, it appears that Paper is the

"distributor" of the products.  And, that Packaging acts as the sales office for  products produced by

Paper. For example, one document reveals that products which were contracted to be shipped out

of Paper's facility were to be billed to Packaging.  (Ex. E)[7]

### H.     Packaging and Paper jointly negotiated a retirement plan for their employees

Exhibit II reveals that Paper and Packaging employees were being offered the same IRA

retirement plan by a single vendor.  Whether or not the companies subsequently contracted with this

vendor as one entity is irrelevant.  It appears that they were acting jointly to obtain a benefit.

Moreover, it appears that someone other than Gary Eberhard, the only identified management

person at Paper, was ensuring that all Paper employees receive information about the retirement plan.

Exhibit II (D251) is a memo on Paper letterhead, addressed to Gary Eberhard, asking him to have

---

[7]Certain documents produced to the Commission by Defendant were marked "Confidential - Attorney's Eyes Only."  The Commission never entered into a confidentiality agreement with Defendant and, therefore, is under no obligation to honor this "confidential" designation.  However, in the spirit of cooperation, it will attempt to honor such designation by redacting what it deems to be the confidential information on such documents.  In certain instances, the Commission has redacted employee names.  If the Court has any question about whose name was redacted, the Commission will consult with Defendant as to a mutually acceptable method for providing the Court with an unredacted document.

all Paper employees attend a meeting with the Morgan Stanley representative.  Again, extrapolating from the fact that Paper has identified no administrative, clerical  or accounting employee, we can assume that this unsigned memo was prepared by someone at Packaging.

The documents also reveal that someone other than Mr. Eberhard maintained ledgers regarding Paper employees' contributions to the IRA account.  A comparison of Exhibits JJ and KK, ledger pages memorializing employee IRA contributions for Packaging and Paper employees, respectively, show that these ledgers were maintained by the same person.  And, a comparison of the writing in those documents with the handwriting of Gary Eberhard (Ex. LL, his employment application), reveal that he was not the person who kept the books.    Paper has identified no employee who has as clerical, administrative, or accounting responsibilities.

### I.    A Paper employee received a bonus from the Packaging company

Exhibit NN[8], which was located in the personnel file of Eugene Fox, the general manager and human resources director for Paper from January 1, 2000 through December 31, 2002, shows that he   received a "Pkg.bonus" in June, 2001 and a second "Pkg. bonus" in June, 2002.   He also received a "Paper bonus" within the same time frame.  If the Paper and Packaging companies are run independently and  at "arms length," as Defendant contends, the Court must wonder why Packaging would gratuitously pay an employee of Paper a "bonus."   Moreover, if in  fact Mr. Fox was a financial asset to Packaging at the same time  Defendant has identified him as general manager and human resource manager at Paper (Ex. J) establishes that there was, in fact, a labor management overlap between the two companies.   Defendant has not identified Mr. Fox as a Packaging company

---

[8]The Commission apologizes for the poor quality of this copy, but is producing it as received from Defendant.

employee. (Ex. EE)  Claimant Anthony Moore complained to Mr. Fox about the racially oppressive environment to Mr. Fox when he was the general manager for Paper. (Ex. RR)

### J.    A Packaging employee works onsite at Paper at least one day a week

The Claimants who continue to work for Paper will testify that Package employee Rose Grabowski works at Paper's Smyrna, Delaware location on a regular basis, at least once a week. (Group Ex. QQ) While the Claimants are unfamiliar with all that she does there, they know that she does "computer stuff." Ms. Grabowski's presence at the Delaware site is supported by a Health Plan document that was supposed to be signed by Eberhard.  In handwriting on the documents, it states: "Gary will sign + give to Rose to bring back to me." (Ex. C)

A document that was located in Claimant Anthony Moore's personnel file (Ex. l) indicates a Paper supervisor, Jerry [Broussard], reported to Packaging's Rose Grabowski the fact that Mr. Moore had stopped by the plant, after his constructive discharge.  At minimum, we can infer from this that Ms. Grabowski, a Packaging employee, was at the Paper location at the time of the report.  Exhibit AA reveals that Ms. Grabowski had some involvement in the return to work of Paper employee Carlyle Moore.

### K.    James Morgan provides administrative and personnel control for both Paper and Packaging

Contrary to Defendant's assertion that owner James Morgan does not participate in the Paper company's personnel matters (Op.Br. at 6), the documents reflect otherwise.  For example, in March, 2005,  Mr. Morgan was involved in handling a disciplinary matter involving a Paper employee. (Ex.

P)  Mr. Morgan apparently has final authority to approve salaries and bonuses for Paper employees. (Ex. Q)   In August, 2004, Morgan co-signed a document addressed to Paper employees which set forth Paper's anti-harassment policy.   That policy provides that a Paper employee may report harassment incidents to, *inter alia*, an officer of the company such as Mr. Morgan.   In 1987, Mr. Morgan advised the Paper general manager about policies regarding use of an automobile owned by Paper.  (Ex. S)

The evidence also suggests that Paper and Packaging employees are subject to the same time and attendance rules and regulations.   (Ex. T) That document shows that the Paper time and attendance policy had been provided to Gary Eberhard by Rose Grabowski, a Packaging employee.

Exhibit W shows that "J.M." (presumably James Morgan) sets personnel policy relating to earning and carrying vacation time by Paper employees.   This handwritten document presumably shows the updated vacation information for Doug Goodermuth, a Paper employee, with a notation about "J.M.'s policy" on vacation time.

### L.    The Board of Directors intermingle both companies' business at meetings

In response to the Commission's request for "minutes" of board meetings for both Paper and Packaging, Defendant produced Group Exhibit K.   These documents appear to be agendas for meetings, not minutes, spanning February 23, 2001 through September 16, 2005.  Of interest in these documents is that it is not always clear which company's board meeting is being memorialized. However, regardless of whether the documents are agendas or minutes, they provide evidence of intermingling of business at the meetings.   For example, Board  notes (Ex. K, D928) which appear to be from a Packaging board meeting, indicate that the Board members discussed Gene [Fox]'s

resignation, a Paper employee. The same Board notes discuss hiring Gary [Eberhard], to replace Mr. Fox. Finally, the notes also discuss Ginger [Andrew's] resignation, a Packaging employee. If the companies are not integrated and if the Board meetings for each company are held separately, why are the resignation and hiring of Paper employees and the resignation of a Packaging employee being discussed at the same meeting?

Also of interest in the Paper Board notes (Ex. K, D922-9925) is that fact that, in addition to Mr. and Mrs. Morgan, the two sole owners of Paper and Packaging, the board meetings were attended by Cindy Morgan Moss and Marianne Morgan Persico, both of whom are Packaging employees and who are not listed as officers or directors of the Paper company. Thus, again, the documents show an intermingling of influence from Packaging employees on the business of the Paper company.

**M.    Intermingling of business with third parties**

Exhibit E, a 2005 invoice for the purchase of products from Paper, identifies Packaging as the billing recipient. Without depositions, the Commission has not determined the business dealings between Paper and Packaging. However, Defendant has not identified any Paper employee who is responsible for billing customers and for customer service. (Ex. A) Rather, four Packaging employees are identified as "sales" and "customer service." (Ex. B, EE).

**N.    Packaging Company employees are not aware of the corporate distinctions between Paper and Packaging**

On July 9, 2004, during the course of the Commission's investigation of Anthony Moore's charge of discrimination, the EEOC investigator Mark Maddox called Mr. Morgan at the Arnold,

Maryland telephone number to discuss his investigation. The telephone was answered by someone who identified herself as Robbi Smith. She informed that Mr. Morgan was not available. Mr. Maddox identified himself and asked if she could tell him how many individuals were employed by P.T. Morgan company. Ms. Smith, identified as working in the Packaging accounting department, informed that there were at least 19 employees. (Ex. PP) Ms. Smith did not ask Mr. Maddox to clarify whether he was asking about Paper or Packaging employees. She simply consolidated both companies' employees. If these companies do exist at arm's length, why would Ms. Smith have any information about the number of employees in the Paper company? This evidence is simply additional support for the already established point that Packaging company employees treat the Paper company as part of the same business for many purposes.

**O.    Record Contains Direct Evidence of Intermingling of Management Functions**

It is safe to assume that Gary Eberhard, alone, does not run a paper mill, provide all human resource functions and perform the business' accounting, billing, sales, payroll and time keeping, and customer service.[9]    In fact, Eberhard's job description (Ex. MM) reveals definitively that he does not perform all of those functions. His job description reads, in relevant part:    **"Keep P.T. Morgan Packaging accounting dept appraised [sic] of all billing, receiving, inventory, payroll hours, repairs, utilities, fuel usage, fork truck usage, end of month reports."** The fact that Mr. Eberhard's job description requires him to report such essential functions and operations as billing, receiving, payroll hours, repairs, utilities, etc., to the **Packaging company's accounting office**

_____

[9]In its Opening Brief, Defendant simply states that "Gary Eberhard, General Manager, participates in the day to day operations of the [Paper] Company." (Op. Br. at 4)

Page 17

permits but a single, irrefutable conclusion – that the two companies are being run as an integrated enterprise.

The limited discovery conducted in this case has yielded sufficient undisputed evidence for the Court to make a definitive finding of sufficient intermingling of administrative, clerical, personnel, and management functions between the Paper and Packaging companies to establish that they are an integrated enterprise for Title VII purposes as a matter of fact and law.

## ARGUMENT

### I.     STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is only appropriate when the moving party proves that no "genuine issue of material fact" exists in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In making the determination as to whether such an issue exits, the evidence must be viewed in favor of the non-moving party and all reasonable inferences drawn in its favor. *Stewart v. Rutgers*, 120 F.3d 426, 431 (3rd Cir. 1997). The following analysis will demonstrate not only that genuine issues of material fact exist as to the business inter-relationship between the Paper and Packaging companies so as to defeat the Defendant's motion, but that sufficient uncontested facts exist to support a grant of the Commission's cross motion for summary judgment.[10]

### II.     STATEMENT OF RELEVANT LAW

---

[10]Pursuant to Rule 56(f), the undersigned EEOC lead trial counsel has submitted an Affidavit (Ex. RR-1) indicating that discovery is still open and that the Commission has served extensive written discovery requests, but it has not yet taken depositions. Thus, to the extent that additional information is required to oppose Defendant's motion or to support the Commission's cross-motion, the Commission requests the Court to refrain from ruling on said motion until after the close of discovery.

The sole issue before the Court on these cross-motions is whether P.T. Morgan Paper Company and P.T. Morgan Packaging Company are an integrated enterprise for purposes of Title VII of the Civil Rights Act of 1964. That is, whether the Commission is able to prove a required element of its claim, that being that the Defendant is an employer as defined by Title VII.

The "integrated enterprise" test was developed by courts to help resolve cases in which a plaintiff attempts to hold two corporations liable as a single employer for violations of a statute prohibiting discrimination in employment. See *Nunez v. Temple Professional Associates, et al.*, 2005 U.S. Dist. LEXIS 2776 *7 (E.D. PA 2005), *citing Gorman v. Imperial Metal & Chemical Co.,* 1999 U.S. Dist. LEXIS 1810 (E.D. PA 1999). The Court's analysis is guided by the Third Circuit Court of Appeals' recent decision in *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3rd Cir. 2003), where the court was faced with the identical issue, although under a significantly different set of facts.

In *Nesbit*, the Court provided a detailed historical explanation of the progression of the courts' analyses of this mixed question of fact and law before setting forth the standard to be applied in this Circuit. A review of the Court's historical analysis, as follows, is helpful in understanding and applying the test to be used. As *Nesbit* explained, several courts of appeals have borrowed a four-part test -- commonly called the "integrated enterprise" test or the "single employer" test -- applied by the National Labor Relations Board ("NLRB") in National Labor Relations Act cases to determine when two nominally distinct companies should be treated as a single entity under Title VII.

The four factors of the NLRB test are "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Nesbit*, 347 F.3d at 84 (*citing Artis v. Francis Howell North Band Booseter Ass'n, Inc.*,

Page 19

161 F.3d 1178, 1184 (8th Cir. 1998)).  Among these factors, "no single factor is dispositive; rather, single employer status under this test 'ultimately depends on all the circumstances of the case.'" *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 486 (3rd Cir. 2001), *cert. denied,* 534 U.S. 950 (2001) (describing but not adopting the test in a case applying the *Worker Adjustment Retraining Notification Act*) (citation omitted).  As *Nesbit* reiterated, **"The heart of the inquiry is whether there is an absence of an arm's-length relationship among the companies**."  347 F.3d at 84 (emphasis provided) (citing *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999)).  Moreover, "Courts applying this four-part [NLRB] standard in Title VII and related cases have focused on the second factor: centralized control of labor relations." *Trevino v. Celanese Corp.*,701 F.2d 397, 403-04 (5th Cir. 1983).

The *Nesbit* discussion continued by noting that while there was surface appeal in applying the NLRB's test in the Title VII context, given the different policies animating the two statutes, "the NLRB test does not self-steer to the Title VII context." *Nesbit*, 347 F.3d at 85.  The Court acknowledged that a significant purpose of the fifteen-employee minimum in the Title VII context is to spare small companies the expense of complying with the statute's many-nuanced requirements. Thus, the Court set forth the following three-part disjunctive test  as the way by which a party may prove that a company and its affiliates are a single employer under Title VII:  (1) when a company has split itself into entities with less than fifteen employees intending to evade Title VII's  reach, or (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining, or (3) the factors courts use to determine when substantively to consolidate two or more entities in the bankruptcy context.  *Nesbit* then expounded upon the third test:

We adopt an intentionally open-ended, equitable inquiry -- which we consider one of federal common law -- to determine when substantively to consolidate two entities. While in the bankruptcy context the inquiry focuses primarily on financial entanglement [footnote omitted], **for Title VII the focus more often rests on the degree of operational entanglement -- whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another**. Relevant operational factors include (1) **the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (*e.g.*, hiring and personnel matters),** (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) **whether a parent company covers the salaries, expenses**, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other. That is not to say that the considerations showing financial entanglement n9are not relevant in *Title VII* cases; they assuredly are. Indeed, the line between operational and financial may be blurred (*e.g.*, when the third parties dealing with entities as one unit are creditors). However, we assume that financial entanglement will be present less frequently in *Title VII* cases than in bankruptcy cases and will be harder for a *Title VII* plaintiff to prove, given that a typical *Title VII* plaintiff has more limited resources and an attorney who does not specialize in financial transactions. [footnote omitted] Proving extensive financial entanglement will, however, bolster a *Title VII* plaintiff's case.

> n9 Among them are (1) the degree of difficulty in segregating and ascertaining individual assets and liabilities, (2) **the existence of transfers of assets without formal observance of corporate formalities**, (3) **the existence of parent and intercorporate loan guarantees**, (4) whether the subsidiary is grossly undercapitalized, and (5) the existence of consolidated financial statements.

*Nesbit,* 347 F.3d at 87-88 (bolding supplied).

In *Nesbit*, the plaintiff failed to produce evidence, other that common ownership, suggesting a substantive consolidation of the two companies. The Court discounted the fact that a joint owner "occasionally participated" in the management of both businesses as proof that the companies did not operate at arms length. Here, as in *Gonzalez v. Comcast Corporation*, *et al.*, 2004 U.S. Dist.

Page 21

LEXIS 14989 (D. DE 2004)(Jordan, J.), the Commission has shown significantly more cross-over in management between companies to establish the existence of an integrated enterprise as a matter of fact and law.

As the Third Circuit Court of Appeals has explained, "The approach [to determining whether two companies are integrated] is holistic, looking to 'all the circumstances of the case' as opposed to any single, dispositive factor, as was the case under old analyses for piercing the corporate veil[...] *See Ferrell v. Harvard Industries, Inc. et al.*, 2001 U.S. Dist. LEXIS 17358 *70-71 (E.D. PA 2001). The *Ferrell* court also explained that centralized control of labor relations can show integrated management. For example, the fact that one company promulgated joint corporate EEO and harassment policies and exerted influence over the compliance of such policies shows an integrated relationship as a matter of law.

In *Battistone v. Sam Jon Corp.*, 2002 U.S. Dist. LEXIS 19399 (E.D. PA 2002), the Court looked to various factors to supply evidence of a "single employer" or "integrated enterprise," including the sharing of employees and management; the fact that all companies were housed in the same location; that all companies were controlled in part by a member or members of the same family. Likewise, in *Bennett v. Picarri Press, Inc.*, 2005 U. S. Dist. LEXIS 1905 (E.D. PA 2005), the Court looked to a variety of factors in determining the nature of the relationship among related companies. While acknowledging the presumption that a parent is not the employer of its subsidiary employees, the *Bennett* court determined that the presumption was overcome where the parent could control the employment practices and decision of the subsidiary; routinely shifted employees between the two companies; the use of the same work force and business offices for both

corporation; and the failure to observe such basic corporate formalities as holding separate shareholder and board meetings.

Generally, the Court must balance the facts and equities of the specific situation presented. On the one hand, "[A] wrongdoer should not escape liability merely because 'corporate formalities' were observed[.]" *Ferrell,* at *65. On the other, however, the Court must consider "the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." (Internal citations omitted.) *Id.* at *64 (*citing Pearson v. Component Technology Corp.,* 247 F.3d 471, 486 (3rd Cir. 2001)(internal citations omitted)).

## III.   APPLICATION OF THE FACTS TO THE LAW

At this juncture in the discovery process, the Commission has no evidence to support a finding of integration based on the first test enunciated by the Court.[11]  The second test does not apply with particularity here in that the underlying allegation is not primarily of malfeasance (i.e., disparate treatment in the terms and conditions of employment), but rather one of nonfeasance

---

[11] *Nesbit* three-part disjunctive test is reviewed is follows:  (1) when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach, or (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining, or (3) the factors courts use to determine when substantively to consolidate two or more entities in the bankruptcy context.  *Nesbit* explained the third part as: "We adopt an intentionally open-ended, equitable inquiry -- which we consider one of federal common law -- to determine when substantively to consolidate two entities. While in the bankruptcy context the inquiry focuses primarily on financial entanglement [footnote omitted],  for Title VII the focus more often rests on the degree of operational entanglement -- whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another. Relevant operational factors include (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (*e.g.*, hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other. (*See infra* at 20-21)

Page 23

(failure to take prompt and effective action upon notification of racial harassment). However, as set forth at length in its Counter-Statement of Facts, the Commission has shown a plethora of undisputed facts which establish an integrated relationship under the third *Nesbit* test by showing significant intermingling in the performance of the two companies' administrative, clerical, accounting, and management matters.[12]

First and foremost, it is beyond dispute that Packaging employees have administrative oversight responsibilities for a number of Paper's administrative, clerical, accounting, and personnel functions. Direct evidence of the intermingling is set out in Paper General Manager Gary Eberhard's job description, where he is charged with keeping P.T. Morgan Packaging accounting department apprized of all "billing, receiving, inventory, payroll, repairs, utilities, fuel usage, fork truck usage, and end of month reports." Each of these items is an essential function in managing Paper's business. We can assume that Eberhard was not required to provide that information to Packaging as an exercise in futility or for no purpose. The only reasonable assumption for the requirement that he communicate key information to Packaging's accounting department employees is that they provide administrative, clerical, billing, and personnel services for the Paper company. The list of Paper employees supplied by Defendant contains noone designated for functions such as billing; accounting; customer service; sales; inventory management; or payroll. Paper would apparently have us believe that Eberhard performs all of these functions. Not only is such a situation beyond belief, but the documents of record clearly show that Packaging employees do, in fact, provide a significant amount of the administrative, clerical, management and personnel services to the Paper business.

---

[12] In *Nesbit*, the Court concluded that there was no evidence suggesting consolidation other than the fact of common ownership.

Page 24

The Commission urges the Court to deem Eberhard's undisputed job description as an admission by Defendant that Packaging's accounting department provides sufficient administrative services to Paper to establish that they are an integrated enterprise under *Nesbit*.  If, however, the Court does not deem this information to be sufficient, the totality of the integrated management, as set forth in the Commission's Counter-Statement of facts, is more than sufficient for the Commission to prevail on its Cross Motion for Summary Judgment or, in the alternative, to defeat Defendant's motion for summary judgment.

Joint ownership of the two companies is not disputed.  (Op. Br. at 4)   Likewise, the Commission has shown that Mr. Morgan has more that minor input into the working of the Paper business.  He was directly involved in personnel disciplinary matters and setting wages and bonuses and time and vacation policies.  As a member of the Board of Directors, he was directly involved in hiring upper level employees in both companies, as were Packaging employees Cindy Morgan Moss and Marianne Morgan Persico.  While Defendant did not have a written anti-harassment policy during the relevant time,  its subsequently adopted policy provides that Paper employees may make complaints to James Morgan.

As shown in detail above, Packaging employees provided significant clerical, accounting, personnel,  and administrative functions for the benefit of the Paper company and its employees.  Both companies share corporate office space, for which Paper pays no rent or compensation.  The companies share telephone number and  facsimile number.  Paper business is conducted on Packaging letterhead.  Packaging employees interface with outside vendors and insurance companies on behalf of Paper company business and employees.  At least one Paper employee received a bonus

from Packaging. At least one Paper employee is identified in official documents as being employed by the Packaging company.

Paper has not shown that it employs staff to provide clerical, administrative operations, billing, or customer service functions necessary for running a business such as it conducts. Rather, the evidence shows that Packaging employees were providing these services for the Paper business.

In addition, the testimony will show that Packaging employee Rose Grabowski visits and works at the Paper facility on a regular basis. Packaging's Dun & Bradstreet's report reveals financial entanglement between the two companies relating to loans taken out from financial institutions.[13] The documents of record show that someone jointly negotiated an IRA retirement policy on behalf of Paper and Packaging employees.

While Defendant has charged the Commission with being overbearing and of taking advantage of a "little" company, it appears that Defendant has not acted with clean hands in filing its Motion for Summary Judgment or in continuing to assert this frivolous defense. Defendant complains of the financial burden it has endured in defending this lawsuit. Yet, clearly its expenses have only grown as a result of pursuing a baseless defense.[14] The Commission would respectfully ask that the Court instruct Defendant to "do what is right, not just win."

## CONCLUSION

---

[13] Due to the fact that discovery is incomplete, the Commission has not ferreted out the nature of that apparent financial entanglement.

[14] In the event that the Court denies Defendant's motion for summary judgment but does not rule dispositively in the Commission's favor, the Commission will be forced to engage in extensive additional discovery regarding Paper's and Package's customer lists; contracts; sales force; billing and collections; etc.

The Plaintiff requests that this Honorable Court find, as a matter of fact and law, that P.T. Morgan Paper Company and P.T. Morgan Packaging Company compose an integrated enterprise for purposes of Title VII and this litigation. Plaintiff respectfully requests this Honorable Court to grant the Commission's Cross-Motion for Summary Judgment.

In the alternative, viewing the evidence and drawing all reasonable inferences in the Commission's favor, it is clear that genuine issues of material fact exist in this case sufficient to defeat the Defendant's motion. And Plaintiff respectfully asks this Honorable Court to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Jacqueline H. McNair
Regional Attorney

Judith O'Boyle
Supervisory Trial Attorney

  /s/ M. Jean Clickner
M. Jean Clickner
Senior Trial Attorney
Equal Employment Opportunity Commission
Liberty Center, Suite 300
1001 Liberty Avenue
Pittsburgh, PA 15222
(412) 644-6439

**Local Counsel:**
**UNITED STATES ATTORNEY DISTRICT OF DELAWARE**
  /s/ Seth M. Beausang
Seth M. Beausang
Asst. U.S. Attorney
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, Delaware 19899
Del. Bar ID No. 4071

Page 27

(302) 573-6277
**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EQUAL EMPLOYMENT | ) |
| OPPORTUNITY COMMISSION, | ) |
|     Plaintiff, | ) |
| | ) |
|       v. | ) Civil Action No. 04-1304 |
| | )  Judge Kent A. Jordan |
| | ) |
| P.T. MORGAN PAPER COMPANY, an | ) |
| affiliate of P.T. MORGAN PACKAGING | ) |
| COMPANY, | ) |
|     Defendant. | ) |

## CERTIFICATE OF SERVICE

I, Seth M. Beausang, counsel for Plaintiff, hereby certify that on this 6th day of January, 2006, a correct copy of the foregoing Commission's Answering Brief in Opposition to Defendant's Motion for Summary Judgment and Brief in Support of Commission's Cross-Motion for Summary Judgment was served by electronic filing:

> Thomas S. Neuberger and
> Steven J. Neuberger
> Two East Seventh St., Suite 302
> Wilmington, DE 19801-3725
> Attorneys for Defendant

 /s/Seth M. Beausang
SETH M. BEAUSANG
Assistant U.S. Attorney